**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| HOLLY ANN GALDO | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-595-DDB |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER OF**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be Affirmed

**HISTORY OF THE CASE**

Plaintiff protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act on April 20, 2010, claiming entitlement to disability benefits due to insomnia, general anxiety disorder, obsessive-compulsive disorder (OCD), and bipolar-manic-depressive disorder. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Dallas, Texas on May 23, 2011. Plaintiff was represented by counsel at the proceeding. At the hearing, Plaintiff and the ALJ's vocational expert, Mr. Gartman, testified.

On June 10, 2011, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff requested Appeals Council review, which the Appeals Council denied on June 19, 2012. Therefore, the June 10, 2011 decision of the ALJ became the final decision of the Commissioner for purposes

of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since March 22, 2010, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3. The claimant has the following severe impairments: DDD repaired, colectomy, rapid cycling bipolar II disorder and OCD (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets of medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a light exertional range of work. She has the ability to lift 20 pounds occasionally and 10 pounds frequently. She has the ability to stand or walk for 6 hours in an 8 hour day and sit for 6 hours in an 8 hour day. She has the ability to understand, remember and carry out detailed tasks and instructions but not complex tasks and instructions. She requires nonpublic work and requires minimal coworker or supervisory interaction.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on May 2, 1971 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable

> job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2010, through the date of this decision (20 C.F.R. 404.1520(g)).

(TR 36-47).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of

a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *See also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520 (1987).  First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled.  20 C.F.R. § 404.1520(b) (1987).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience.  20 C.F.R. § 404.1520(c) (1987).  Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987).  20 C.F.R. § 404.1520(d) (1987).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work.  20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy.  A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482

U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the **Fifth** step.

## **ANALYSIS**

Plaintiff brings one point of error. She contends that the ALJ failed to provide good cause for his rejections of her treating physician's opinions. "[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985)). But a treating physician's opinions are not conclusive. *Id.* "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Id.* Recognized "good cause" exceptions include, "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* (citing *Scott,* 770 F.2d at 485). If good cause is shown, then the ALJ may accord the treating physician's opinion less weight, little weight, or even no weight. *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1995). If the ALJ does not accord a treating doctor's opinion controlling weight, the ALJ must set forth specific reasons for the weight given, supported by the medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). And, if competing first-hand medical evidence from a treating or examining physician does not exist, the ALJ must consider specific factors before

rejecting a treating physician's opinion.[1] *Newton v. Apfel,* 209 F.3d 448, 453, 458 (5th Cir. 2000).

The ALJ cites to treatment notes from Dr. Jordon, Phd. Dr. Jordon states that Plaintiff is unable to constantly maintain attendance and effectiveness in job performance. The ALJ finds that this is a legal conclusion. He also notes the Functional Capacity Questionnaire filled out by Dr. Jordon, as well as several treatment sessions in 2010-2011. The ALJ faults the impairment findings in that there is not a "sufficient nexus to a medically determinable impairment reasonably capable of producing the symptoms and limitations." TR 45. "Medically determinable" means a person's physical or mental impairment or combination of impairments must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 404.1528. It must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1528.

In this case, the ALJ found that Dr. Rattan's assessment should carry more weight than that of Dr. Jordon. Essentially, Dr. Rattan noted that there were no overt deficits in Plaintiff's judgment and that her insight appeared good. He noted her mood was positive and reflected no bizarre thought content. He also opined that there was no formal thought disorder. He assigned Plaintiff a GAF score of 58. Based on Dr. Rattan's report, the state agency examiners found that she did not meet the B criteria.

---

[1] These factors include: 1) the physician's length of treatment of the plaintiff; 2) the physician's frequency of examination; 3) the nature and extent of the treatment relationship; 4) the support of the physician's opinion afforded by the medical evidence of record; 5) the consistency of the opinion with the record as a whole; and 6) the specialization of the treating physician. 20 C.F.R. § 404.1527(c)(2).

The early treatment notes sent to the State indicate that Plaintiff saw Dr. Jordon about four times and that Dr. Jordon concurred with a diagnosis of Bipolar and General Anxiety Disorder as reported by Plaintiff and her family. In an evaluation in July 2010, Dr. Jordon noted that if Plaintiff were was given time to recover from her colon surgery she may be able to return to work. Jordon rated her appearance, speech, orientation, thought process, memory, and concentration, as well as her insight and judgment, as good. TR 507-509. She also noted that Plaintiff could manage her own benefits.

Later treatment notes indicate that Plaintiff has had a severe time in coping with stress, mainly from her own family situation as well as finances. The ALJ notes that, in March 2011, Dr. Jordan notes that Plaintiff feels good, and that her energy is back to normal. TR 581. Subsequent treatment notes however reflect that Plaintiff is still having problems.

As the ALJ noted, Dr. Jordon's functional assessment is cursory. Appellate courts have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records, as the ALJ found in this case. *See Peck v. Barnhart,* 214 F. App'x 730, 738 (10th Cir. 2006) (ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel,* 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala,* 994 F .2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.... [When]

7

these so-called reports are unaccompanied by thorough written reports, their reliability is suspect...."); *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); *cf. Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010) (citing *Johnson,* 189 F.3d at 564; *Mason,* 994 F.2d at 1065) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records.... Here, there is a long record of treatment by [the treating physician] that supports his notations on the form.").

In this case, the ALJ relied on the opinion of the examining psychologist, Dr. Rattan, in his decision. Therefore, the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *See Thibodeaux v. Astrue*, 324 Fed. Appx. 440 (5th Cir. 2009). In reviewing the later records of Dr. Jordon, the Court holds that the ALJ holding is supported by substantial evidence.

As noted before, most of Plaintiff's stress relates to family and finances. In December 13, 2010, Jordon's notes reflect that the family spent $5,000 on a trip to Disneyland at the time her husband was quitting his job. Her husband was hoping to have Plaintiff's social security disability by that time. TR 621. In January, she had stress over her 40th birthday as to whether she should plan the party or leave it to her husband. TR 622. She was advised in her BP support group not to return to work at American Airlines. TR 623. In February, she reported that her mother in law would not be coming to live with the family. She had a good day while riding the train to the zoo. TR 624. In March, she was feeling really good. TR 624. In May, she just returned from her 40th birthday trip and indicated that she was taking another trip to the Outer Banks. TR 626. She reported rapid cycling but added to the stress is that her husband wants to quit his job. TR 627. In

July, she reported being up and down, with good days and depressed days, and even stated she was felt like going back to work on the good days. TR 628. She reported increased problems over her husband comparing her to his mother. TR 629. The last entry noted that her marriage was better and that she was exercising. TR 630.

The Court holds that the ALJ did not err in his ultimate decision.

## FINDING

Pursuant to the foregoing, the Court FINDS that the decision of the Administrative Law Judge be **AFFIRMED.**

**SIGNED this 20th day of March, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE